J. C. YETZER, Appellant, v. W. H. APPLEGATE et al.,
Appellants.

1.  Partnership: ACCOUNTING: EVIDENCE. Where in an action for an
    accounting between partners it appeared that an agent employed to
    make purchases of live stock on behalf of the firm, and also for one of
    the members of the firm individually, commingled the funds of the
    firm and of the individual partner by depositing the same in one

account in his own name, and the evidence showed that some of the money of the firm was invested by the agent for the use and benefit of the individual partner, and had not been accounted for, but the evidence as to the amount thereof was voluminous and conflicting, yet favored the finding of the referee that the amount so appropriated was about thirteen hundred dollars, *held*, that the fact that the copartner charging the misappropriation had at all times access to the books of the firm, and was capable of discovering the fraud if practiced, was controlling against his claim that the amount of such misappropriation was as great as seventeen thousand dollars.

2. ———: ———: USURY: EVIDENCE.   Where the notes of a firm after a series of renewals were paid by one of the partners after notice from his copartner that the same were tainted with usury, and that he desired to make such defense to the collection thereof, *held*, that the plea of usury was not defeated by such payment, and that the usurious interest charged in the several series of notes should, in an accounting between the partners, be credited against the amount paid by the partner taking up said notes where the fact of usury was established.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, OCTOBER 27, 1891.

THIS is an equitable action, and it involves the settlement of a partnership in which the plaintiff and the defendants were members under the partnership name of W. H. Applegate & Co., and afterwards in the name of Yetzer & Applegate.   The business of the firm was buying and slaughtering hogs, and packing the product at a packing-house at Atlantic, in Cass county. The partnership was commenced in the year 1878, and continued under the name of W. H. Applegate & Co. until December, 1881, when the name was changed to Yetzer & Applegate, and the business continued until some time in the month of July, 1882, when it ceased, and all of the product belonging to the firm was sold and applied on the partnership indebtedness.   This action was commenced on the twentieth day of March, 1883.   Issues were made up soon thereafter.   The attorney who represented the defendants removed from the

state. The counsel who succeeded him filed an amended and substituted answer and cross-bill on the tenth day of February, 1887. Other pleadings were filed by the respective parties, and the hearing of the cause was commenced before the court. Afterwards all of the issues were referred to a referee. The referee made a report of the facts found by him, and his conclusions of law, and the report was confirmed by the court, and a decree in accordance therewith was entered. Both sides to the controversy appeal.—*Affirmed.*

*L. L. De Lano*, for plaintiff.

*H. G. Curtis*, for defendants.

ROTHROCK, J.—The printed abstracts and arguments in the case consist of some eleven hundred pages. The abstracts are largely made up of portions of books of account. It appears that expert accountants were employed by the parties, and a great deal of time was taken in endeavoring to arrive at a fair accounting between the parties. When the report of the referee was filed, the plaintiff made a motion that it be approved and confirmed. The defendants filed exceptions to the report at great length. The plaintiff thereupon withdrew his motion to confirm the report, and filed his exceptions. All of these exceptions were overruled, and the report confirmed. The whole case is here for trial anew, and under our judicial system it is incumbent on this court to go through all of these accounts, and determine whether the report of the referee is supported by a preponderance of the evidence. We have endeavored to perform that duty as best we could, and will state our conclusions as briefly as may be, without any discussion or elaboration of the evidence. In our examination of the case, we have been greatly aided by the report of the referee. After a careful reading of all of

1. PARTNERSHIP: accounting: evidence.

the evidence, we have taken up his findings of fact from the first to the last, and examined the evidence bearing upon each finding. If the referee correctly found the facts, his conclusions of law necessarily follow. Indeed, there is no real dispute in the law of the case, and we think there is no real ground for dispute in any question of fact as found by the referee, with two exceptions. It appears that the business of packing pork at Atlantic was first commenced by the defendants, W. H. Applegate and S. J. Applegate. They had a small establishment located on land owned by one or the other of them. At the time the partnership was formed the land and buildings were of the value of about twenty-one hundred dollars. This is the whole amount which up to that time the defendants had put in the business. The plaintiff was at that time, as we understand the evidence, a merchant at Atlantic. He was president of the Cass County Bank, and the largest stockholder therein. He had property and credit, and was thought to be a desirable partner in the business. No member of the firm, as first organized, or ever afterwards, put any of his own money in the business. At the very commencement of the business it was intended that the plant should be improved and built up, and the business carried on upon borrowed money, and this purpose was carried out to the end. It was arranged that the money should be furnished by the Cass County Bank, or from parties in the city of Chicago through that bank. After a time a misunderstanding arose, and ill feeling was engendered between the defendant, W. H. Applegate, and the plaintiff. The plaintiff objected to an indiscriminate drawing of checks upon the bank, and insisted that all checks should be passed through his hands for his approval. This was done, and after that arrangement was made the name of the partnership was changed. This was in December, 1881. When the firm finally

closed its operations it was found that by the books it was indebted to the bank in the sum of about twenty-one thousand dollars. This was evidenced by promissory notes executed by the individual members of the partnership, and the notes drew ten-per-cent. interest after maturity. These notes became due, and the plaintiff took them up, paid part of the amount, and after the commencement of this suit paid off the balance. His alleged object in bringing this action was to relieve himself from the payment of all this indebtedness. This indebtedness to the Cass County Bank was the only amount owed by the firm. It had its buildings and other property. A receiver was appointed when this action was commenced. The pork-house was afterwards destroyed by fire. Certain insurance thereon was paid, and other property was sold; but the whole proceeds are but a trifling amount, as compared to the debt.

The defendant, W. H. Applegate, makes the following claim, as stated by his counsel in this language: "Some time in December, 1881, owing to difficulties between Mr. Yetzer and Mr. Applegate, the work of the firm was discontinued, and an agreement was entered into by which the business was to be carried on by J. C. Yetzer and S. J. Applegate, under the name of Yetzer & Applegate, on account of which business W. H. Applegate was to receive, for his interest in the packing-house business, one-fourth of the profits of the business. The matter of dispute in this case is as to what were the profits of Yetzer & Applegate. The plaintiff claims that there were no profits made, while the defendants and appellants claim that Yetzer & Applegate made a net profit of sixty-five thousand, one hundred and ten dollars and sixty-seven cents, and claim interest thereon from Mr. Yetzer at six per cent. from the time the money was withdrawn from the business to the present time, or up to the time of trial of

this case, making an amount due W. H. Applegate of twenty-two thousand, three hundred and thirty-four dollars and sixty-six cents; from which deduct the note which W. H. Applegate gave the new firm, leaving a balance of twenty-one thousand, five hundred and thirty-four dollars and sixty-six cents, now due him, with interest from the date of trial to this time." The ground of this claim is that Yetzer appropriated to his own use a large amount of the money of the partnership. The specification is that he purchased a large number of hogs at certain railroad stations, with partnership funds, and shipped them to Chicago, and sold them, and gave the firm no credit for the amount of the sales. It is true that one Helmer was employed by Yetzer to purchase hogs for the firm, and that Helmer also purchased hogs for Yetzer. As to this charge of fraud the referee found as follows: "It further appears that, in compliance with the contract of copartnership, as stated in the fourth finding herein, J. C. Yetzer employed one C. J. Helmer, at his own expense, to purchase stock for said firm at Harlan and Avoca; said firm furnishing him the money with which to make said purchases for them. At the same time and places said Helmer was employed in purchasing stock and supplies for the personal use of said J. C. Yetzer, for which purpose he was furnished money by said J. C. Yetzer. That money furnished by said firm and J. C. Yetzer was commingled by said C. J. Helmer, by deposit in one account in his own name. That said funds were so commingled by said Helmer without the knowledge of any party to this action. That, of the funds so furnished by W. H. Applegate & Co., some portion was used by said Helmer in the purchase of stock and supplies for the personal use of J. C. Yetzer, and of which he received the benefit. That said J. C. Yetzer has accounted for the funds so used, except that, during the year 1881, thirteen hundred and sixty-

two dollars of the money of W. H. Applegate & Co. was so devoted to his use and benefit, and for which it does not appear that he has in any way accounted. Of the funds so furnished said Helmer by W. H. Applegate & Co. during the year 1881, the sum of seven hundred and eighteen dollars is no way accounted for by stocks purchased and delivered said firm, nor can I determine from the evidence what disposition was made of it. And it is not shown that any loss or misappropriation of funds of said firm occurred, other than heretofore stated, through the neglect or fraud of any member of said firm.''

This finding is one of those to which we have given particular attention, because it is the one on which it is claimed with great zeal in behalf of the defendants that the facts therein found are directly contrary to the evidence, and we are assured by counsel that the evidence shows that Yetzer, by the means above named, deliberately defrauded the other members of the firm of the sum of seventeen thousand dollars or thereabouts. Our examination of the evidence leads us to the same conclusion as that arrived at by the referee. We are free to say that the conclusion cannot be vouched for as entirely accurate; and it is to be understood that in a case like this, where experts differ, mathematical accuracy cannot always be attained. One fact stands out all through the case, and that is that W. H. Applegate, in whose behalf these charges of fraud appear to be made, had at all times access to the books of the firm; and if this enormous fraud had been practiced it would have been promptly discovered by him, and arrested. He does not claim that he was incapable of making the discovery. He is the principal witness by which the defendants claim to have established the fraud.

The other findings of fact, of which we have thought it proper to make special mention, are as

follows: "During the time said firm was conducting
their said business large sums were borrowed by note
of Cass County Bank, upon which usurious rates of
interest were charged and paid; and I further find that
the money paid to said Cass County Bank by said firm
prior to its dissolution was voluntarily paid, and with
the knowledge and acquiescence of all parties to this
action. *Ninth.* It does not appear from the evidence
what amount of usurious interest was paid by said firm
to Cass County Bank prior to the dissolution of said
firm. *Tenth.* At time of dissolution of said firm there
was no indebtedness against said firm except in favor
of members of said firm, and except, further, that Cass
County Bank held, of notes executed by the members
of said firm jointly, of date of November 30, 1881, one
of ten thousand dollars, one of five thousand dollars,
and one of six thousand dollars, all due in ninety days,
with ten-per-cent. interest after maturity; also note for
nine hundred and twenty dollars, due in sixty days,
with ten-per-cent. interest after maturity. Said note
for nine hundred and twenty dollars represented
interest at ten per cent. on the aforesaid three notes to
maturity, and accrued interest at ten per cent. on past-
due notes for twenty-one thousand dollars, of which
said three notes were renewals. In addition to said
note of nine hundred and twenty dollars, there had
been paid, as interest on notes, of which notes of date
November 30, 1881, were renewals, to the sum of
seventeen hundred, eighty-nine dollars and sixty-three
cents. *Eleventh.* On May 22, 1882, the notes described
in the tenth clause hereof, of date November 30, 1881,
with the accrued interest thereon from maturity, to-wit,
three hundred and twenty-four dollars and seventy-
three cents,—total, twenty-two thousand, two hundred
and forty-four dollars and seventy-three cents,—were
credited with twenty-one hundred and eighty dollars
and ninety-six cents, balance in bank to credit of firm,

YETZER V. APPLEGATE. [83 Iowa

and with sixty-three dollars and fifty-nine cents interest allowed on such balance; and renewal notes were made by J. C. Yetzer, W. H. Applegate and S. J. Applegate for balance, to-wit, twenty thousand dollars and eighteen cents, and interest thereon for ninety-three days at ten-per-cent. interest, to-wit, for two hundred and five dollars and thirty cents, due in three months, with ten-per-cent. interest after maturity. *Twelfth.* That said notes referred to in the tenth and eleventh findings represented *bona fide* indebtedness from said firm to the Cass County Bank, except so far as they were tainted with usury, as hereinafter described. *Thirteenth.* On April 13, 1883, plaintiff, J. C. Yetzer, took up the notes made May 22, 1882, and paid thereon the sum of twenty-one thousand, five hundred and seventy-nine dollars, and that such was for the purpose of avoiding plea of usury. *Fourteenth.* That prior to April 13, 1883, the defendant, W. H. Applegate, informed said J. C. Yetzer that there was usury in said notes; that he desired to contest said notes on account of usury, and he protested to said J. C. Yetzer against the payment of said notes by said Yetzer on the firm's account. *Fifteenth.* That at the time the money was borrowed from said bank, and notes given, of which the notes described in the tenth and eleventh clauses hereof were in the series of renewals, a greater rate of interest was agreed to be paid than ten per cent. per annum. *Sixteenth.* That the entire amount of interest paid on said original notes and their renewals, down to April 13, 1883, was the sum of forty-six hundred and thirteen dollars and thirty-six cents, and of said amount four hundred and seventy-four dollars was in excess of ten per cent. per annum."

It will thus be seen that the referee in his findings upon the question of usury did not go back of the notes of which those held by the bank were renewals. He deducted all of the interest on these series of notes, which interest

2. —: —: usury: evidence.

amounted to forty-six hundred and thirteen dollars and thirty-six cents, and refused to allow the plaintiff for that much of the debt of the firm which he had paid. It is claimed in behalf of the defendants that the finding that the evidence does not show what amount of usurious interest was paid by the firm to the Cass county bank prior to the time these notes were made is not correct. We are content with this finding. It is not satisfactory to either side of the controversy, and they probably never will be satisfied that it is correct. The defendants claim that the evidence amounts to an absolute demonstration that a sum equal to the whole of the principal of the notes was paid upon contracts into which usurious interest entered, and it is asked that the whole amount of the debt be wiped out as usurious. There can be no real dispute that, if the renewals of the indebtedness to the bank were one continuous transaction, all connected together, and at these renewals usurious interest was charged or contracted for, there could be no recovery of any interest from the beginning; and there can be no doubt that the evidence shows that the defendants directed the plaintiff not to pay the notes because they were usurious. Under such circumstances, it is very plain that the plaintiff could not defeat the plea of usury by taking up the notes. But while the law denominates a usurious contract as corrupt and tainted, yet the fact that a contract is usurious should not be left to conjecture. Without further elaboration, we are content to say that it does not appear what amount of usurious interest was paid prior to the two series of notes above mentioned.

As we have said, there is no other objection to the report of the referee by any of the parties which we think it necessary to consider. If the contention of the defendant, W. H. Applegate, should prevail in this case, we should reach the astounding conclusion that a

packing-house plant of the mere nominal value of two thousand dollars could be built up in a short time by an expenditure of some twenty-seven thousand dollars in buildings and improvements, and run for two or three years, doing but a small business, and borrow every dollar of money to make the improvements, and carry on the business at ten per cent. per annum interest, and wind up its career with a profit of sixty-five thousand dollars. It would require most convincing evidence to reach any such conclusion, because it is contrary to all human experience. The decree of the district court will be AFFIRMED.